# United States Court of Appeals
## For the First Circuit

---

No. 04-1513

STATE OF RHODE ISLAND,
Petitioner, Appellant,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND
UNITED STATES ENVIRONMENTAL APPEALS BOARD,
Respondents, Appellees.

---

PETITION FOR REVIEW OF AN ORDER
OF THE UNITED STATES ENVIRONMENTAL APPEALS BOARD

---

Before

Boudin, Chief Judge,
Selya and Lipez, Circuit Judges.

---

Tricia K. Jedele, Special Assistant Attorney General, with whom Brian A. Wagner, Deputy Legal Counsel, Rhode Island Department of Environmental Management, was on brief, for appellant.

Michael B. Heister, Attorney, Environment and Natural Resources Division, with whom Thomas L. Sansonetti, Assistant Attorney General, Environment and Natural Resources Division, John C. Cruden, Deputy Assistant Attorney General, and Susmita Dubey, Office of the General Counsel, United States Environmental Protection Agency, were on brief, for appellees.

Wendy B. Jacobs, John M. Stevens, Randall Kromm, and Foley Hoag LLP on brief for USGen New England, Inc., amicus curiae.

---

August 3, 2004

---

**SELYA, Circuit Judge.** The state of Rhode Island seeks interlocutory review of a decision by the Environmental Appeals Board (the EAB) denying its motion to intervene in a pollution-discharge permit proceeding. The case presents a threshold question about the availability of judicial review with respect to such interlocutory administrative determinations. We hold, as a matter of first impression in this circuit, that the collateral order doctrine applies to agency determinations. Here, however, the order appealed from does not fit within the parameters of that doctrine: the EAB proceedings are ongoing, and Rhode Island's challenge to the intervention decision can (and should) be adjudicated at the conclusion of the administrative proceedings. Consequently, we dismiss the appeal for want of appellate jurisdiction.

## I. THE STATUTORY FRAMEWORK

The principal purpose of the Clean Water Act (the CWA) is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a); see also Adams v. EPA, 38 F.3d 43, 47 (1st Cir. 1994). One of the ways in which the CWA seeks to achieve this purpose is by authorizing a national pollution discharge elimination system (NPDES). Under this regime, persons contemplating the discharge of pollutants into United States waters must obtain NPDES permits before doing so. See 33 U.S.C. §§ 1311(a), 1342; see also P.R. Aqueduct & Sewer

-2-

Auth. v. EPA, 35 F.3d 600, 601 (1st Cir. 1994). Such permits govern, inter alia, the quantity and concentration of discharged pollutants as well as the rate of discharge. See Arkansas v. Oklahoma, 503 U.S. 91, 101-02 (1992) (citing pertinent statutory and regulatory provisions).

NPDES permits may be issued either by the Environmental Protection Agency (the EPA) or, in those states authorized to administer their own NPDES programs, by a state agency (subject, however, to EPA review). 33 U.S.C. § 1342. Since Massachusetts is not a specially authorized state, we focus here on the EPA's permitting procedures.

Once the EPA receives a permit application, its regional administrator typically prepares a draft permit, invites comment, and initiates a public hearing. 40 C.F.R. §§ 124.6, 124.10, 124.12. At the end of this process, the regional administrator hands down a decision denying or granting the permit. Id. § 124.15. A granted permit ordinarily will carry conditions, which may be of varying scope and severity. 33 U.S.C. § 1342(a). Any person who has participated during the comment period may, within thirty days, petition the EAB for review of the EPA's decision (including review of the permit conditions). 40 C.F.R. § 124.19(a). That review is discretionary. Id. Should the EAB deny review, the EPA-endorsed permit becomes administratively final. Id. § 124.19(c).

If, however, the EAB elects to afford review, it gives public notice to that effect. Id. It then sets a briefing schedule and invites interested persons to participate as amici (i.e., "friends" of the Board). Id. Only after an EAB determination on the merits is the regional administrator authorized to issue a final permit. Id. § 124.19(f)(1). Any interested person can then petition for judicial review of the EAB's actions (or any aspect thereof) in the appropriate circuit court of appeals. 33 U.S.C. § 1369(b)(1)(F).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case involves the Brayton Point power plant, operated by USGen New England, Inc. (USGen) in Somerset, Massachusetts. The plant sits on the shores of Mount Hope Bay, a body of water lying partly within Rhode Island's borders. Heat is a pollutant for CWA purposes, id. § 1362(6), and the plant's cooling system discharges water into the bay at elevated temperatures. According to the EPA, discharges of heated water from the plant have detrimentally affected the bay's fish population.

The NPDES permit for Brayton Point expired in 1998. USGen applied for a renewed permit and, throughout the pendency of the permitting procedures, the EPA undertook to address concerns about the plant's discharge protocol. A draft permit was issued in 2002. Rhode Island played an active role during the comment

period.  On October 6, 2003, the EPA's regional administrator for Region I handed down a proposed final NPDES permit for Brayton Point's discharge system.  The permit contained a series of new, more stringent conditions.  USGen filed a petition for administrative review and requested an evidentiary hearing.  Rhode Island moved for leave to intervene in order to support the proposed permit or, alternatively, for permission to participate as an amicus.

The EAB responded by issuing a multi-part order.  In re USGen New Engl., Inc. Brayton Point Station, NPDES Appeal No. 03-12, slip op. (Envtl. App. Bd. Feb. 19, 2004), available at http://www.epa.gov/eab/orders/usgen.pdf.  The order granted USGen's petition for review, reserved decision on whether to hold an evidentiary hearing, denied Rhode Island's motion to intervene without prejudice (with the proviso that the motion could be renewed in the event that the EAB subsequently decided to convene an evidentiary hearing), granted Rhode Island amicus status, and set a briefing schedule.

Rhode Island took an immediate appeal from the conditional denial of its motion to intervene.  We expedited review and heard oral arguments on June 7, 2004.  We now conclude that we lack jurisdiction over Rhode Island's interlocutory appeal.

## III.  APPELLATE JURISDICTION

Federal courts are courts of limited jurisdiction.  Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, 362 F.3d 136, 138 (1st Cir. 2004).  Thus, they can hear cases only if and to the extent that they are authorized to do so by statute.  Bell v. New Jersey, 461 U.S. 773, 777 (1983).  With this in mind, we inspect the hooks on which Rhode Island tries to hang our jurisdiction.

### A.  Section 1369(b)(1)(F).

Rhode Island's first response is to identify 33 U.S.C. § 1369(b)(1)(F) as the basis for appellate jurisdiction in this case.  This is a very frail hook.  The statute provides:

> Review of the Administrator's action . . . in issuing or denying any permit under section 1342 of this title . . . may be had by any interested person in the [appropriate] Circuit Court of Appeals of the United States . . . upon application by such person.  Any such application shall be made within 120 days from the date of such . . . issuance or denial . . . . .

33 U.S.C. § 1369(b)(1)(F).  By its plain terms, this provision conditions the availability of judicial review on the issuance or denial of a permit.  In addition, the case law has construed the provision in that manner.  See, e.g., Appalachian Energy Group v. EPA, 33 F.3d 319, 322 (4th Cir. 1999); City of Ames v. Reilly, 986 F.2d 253, 256 (8th Cir. 1993).

Given the statutory and regulatory scheme, this construction defeats Rhode Island's first jurisdictional claim.

Where a petition for administrative review has been timely filed, the regional administrator issues or withholds a permit only at the conclusion of the EAB review process. 40 C.F.R. § 124.19(f)(1). This means that where EAB proceedings are ongoing — as they are here — there has not as yet been an issuance or denial of a permit sufficient to support the invocation of circuit court jurisdiction under section 1369(b)(1)(F).

This reading of section 1369(b)(1)(F) comports with the "strong presumption" that "judicial review [of an agency decision] will be available only when agency action becomes final." Bell, 461 U.S. at 778. Agency action is considered final when it represents the culmination of the agency's decisionmaking process and conclusively determines the rights and obligations of the parties with respect to the matters at issue. Bennett v. Spear, 520 U.S. 154, 178 (1997). Here, that point will not be reached until the completion of proceedings before the EAB. Only then will a final NPDES permit issue, concluding the EPA's decisionmaking process and imposing real-world obligations. See 40 C.F.R. § 124.19(f)(1) (stating that, for purposes of judicial review, "final agency action occurs when a final . . . NPDES . . . permit decision is issued by EPA and agency review procedures under this section are exhausted").

### B. **The Collateral Order Doctrine**.

Rhode Island has a fallback position. Despite the absence of final agency action in the traditional sense, Rhode Island suggests that the EAB's order denying intervention is amenable to immediate review under the so-called collateral order doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949) (describing a "small class" of orders that do not end the proceedings below but should, for systemic reasons, be treated as final and immediately appealable). This suggestion warrants serious consideration.

We begin by stepping backward in time. The collateral order doctrine was developed as a safety valve to provide a modicum of relief from overly strict application of the requirement that appellate courts review only final decisions of district courts. See 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."); see also Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994) ("The collateral order doctrine is best understood not as an exception to the final decision rule laid down by Congress in § 1291, but as a practical construction of it.") (excess punctuation omitted). There remains some question whether the doctrine applies at all in the administrative context, that is, whether an aggrieved party can invoke the doctrine to obtain immediate appellate review of a

collateral order that impacts, but does not end, an administrative proceeding. See Augusta Bakery Corp. v. NLRB, 846 F.2d 445, 446-47 (7th Cir. 1988) (reserving the question); see also R.I. Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31, 44 (1st Cir. 2002) (speculating that interlocutory review might be available for some non-final administrative orders "based on an analogy to the collateral order doctrine"). Today, we answer that question affirmatively and hold that the collateral order doctrine does have vitality with respect to judicial review of agency determinations. We ground this holding on three lines of reasoning.

First and foremost, the Supreme Court has strongly signaled, in a trilogy of cases, that Cohen's rationale carries over to administrative determinations. In Mathews v. Eldridge, 424 U.S. 319 (1976), the Court concluded that an agency order constituted a "final decision by the Secretary" for purposes of judicial review. Id. at 328. Pertinently, Justice Powell wrote:

> [T]he nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied. The role these factors may play is illustrated by the intensely "practical" approach which the Court has adopted, Cohen v. Beneficial Ind. Loan Corp., . . . when applying the finality requirements of 28 U.S.C. § 1291 . . . . To be sure, certain of the policy considerations implicated in . . . [§] 1291 cases are different from those that are relevant here. But the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause

-9-

> crucial collateral claims to be lost and
> potentially irreparable injuries to be
> suffered remains applicable.

Id. at 331 n. 11 (citations omitted).

In a subsequent case, the Supreme Court, albeit with only meager discussion, actually applied the collateral order doctrine to determine the reviewability of an agency order. See FTC v. Standard Oil Co., 449 U.S. 232, 246 (1980) (concluding that the order in question was not immediately reviewable). The Court reinforced the thought that the collateral order doctrine was administratively available in Bell, 461 U.S. at 778-79, in which it intimated that the presence of an appealable collateral order might allow a federal court to exercise jurisdiction over an otherwise non-final agency determination. We agree with Judge Ginsburg, see DRG Funding Corp. v. Sec'y of HUD, 76 F.3d 1212, 1220-21 (D.C. Cir. 1996) (Ginsburg, J., concurring), that the signposts erected by the Court are reasonably clear. Given those signposts, we are loath to strike off in a different direction.

Second, we see no overriding policy reason to apply a wholly different rule of finality to review of agency determinations. Both in litigation and in administrative proceedings, insisting upon a final decision before appellate intervention promotes efficiency by avoiding disruption, delay, duplication, and needless expense. Such a rule also allows the tribunal of first instance, be it a court or an agency, an

opportunity to shepherd a case to an orderly and expeditious conclusion without the interruptions that accompany piecemeal review. Compare Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430 (1985) (describing value of § 1291 finality rule), with Standard Oil, 449 U.S. at 242-43 (describing value of final agency action requirement). The collateral order doctrine does not frustrate this requirement, but, rather, embodies a practical, common sense realization that, in a few instances, the costs of finality may outweigh its benefits. See Johnson v. Jones, 515 U.S. 304, 311 (1995). That is as true in the administrative context as in a purely judicial setting.

There may, of course, be an argument that finality has added value in the administrative context. Cf. McKart v. United States, 395 U.S. 185, 194 (1969) (noting that postponing judicial review of agency action until exhaustion of administrative review is "an expression of executive and administrative autonomy") (quoting Louis L. Jaffe, Judicial Control of Administrative Action 425 (1965)). On the whole, however, the idea that preserving crucial collateral claims and avoiding potentially irreparable harm occasionally justifies construing statutorily created finality requirements with a modicum of flexibility seems to apply with equal (or, at least, nearly equal) force to the review of both judicial and administrative orders. See Meredith v. Fed. Mine Safety & Health Rev. Comm'n, 177 F.3d 1042, 1050-51 (D.C. Cir.

-11-

1999); Cmty. Broad. of Boston, Inc. v. FCC, 546 F.2d 1022, 1024 (D.C. Cir. 1976) (per curiam).

Third, and finally, every circuit to have considered the question to date has determined (often with little or no analysis) that the collateral order doctrine applies to judicial review of administrative determinations. See Osage Tribal Council v. U.S. Dep't of Labor, 187 F.3d 1174, 1179 (10th Cir. 1999); Meredith, 177 F.3d at 1050-51; Carolina Power & Light Co. v. U.S. Dep't of Labor, 43 F.3d 912, 916 (4th Cir. 1995); Jim Walter Res., Inc. v. Fed. Mine Safety & Health Rev. Comm'n, 920 F.2d 738, 744 (11th Cir. 1990) (per curiam); Donovan v. OSHRC, 713 F.2d 918, 922-23 (2d Cir. 1983); Donovan v. Oil, Chem., & Atomic Workers Int'l Union, 718 F.2d 1341, 1344-45 (5th Cir. 1983); Marshall v. OSHRC, 635 F.2d 544, 548 (6th Cir. 1980). We are not disposed to divide the circuits in the absence of any compelling justification for creating a split. See, e.g., Alternative Sys. Concepts, Inc. v. Synopsys, Inc., ___ F.3d ___, ___ (1st Cir. 2004) [No. 03-1406, slip op. at 15]. There is none here.

These three reasons converge to make a solid case for the deployment of the collateral order doctrine in judicial review of administrative determinations. Accordingly, we hold that the doctrine is generally applicable in that context.

### C. **The Denial of Intervention**.

Against this backdrop, we turn to the question of whether the EAB's order denying Rhode Island's motion to intervene qualifies as an immediately appealable order under the collateral order doctrine. To reach that safe harbor, the order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978); accord In re Recticel Foam Corp., 859 F.2d 1000, 1003-04 (1st Cir. 1988). The order must meet all three of these requirements in order to qualify for interlocutory review.

In this instance, the question of intervention plainly satisfies the second prong of the test; the issue is separable from the merits of the underlying proceeding. Cf. Williams v. Katz, 23 F.3d 190, 192 (7th Cir. 1994) (holding that the question of a putative intervenor's status was "entirely separate from" the underlying tort action). The first and third prongs, however, comprise greater obstacles to Rhode Island's aspirations.

Under the first prong of the collateral order test, an order must "conclusively determine the disputed question." Coopers & Lybrand, 427 U.S. at 468. Tentative orders, subject to change before the end of the proceedings, fall short of this benchmark. Id. at 469 & n.11. This presents a potential problem here because

the EAB denied Rhode Island's motion to intervene without prejudice and indicated that it would allow the state to renew its motion if an evidentiary hearing eventuated.

There is some authority suggesting that denials of intervention without prejudice fail to satisfy Cohen's "conclusiveness" requirement. See, e.g., United States v. City of Milwaukee, 144 F.3d 524, 528-29 (7th Cir. 1998) (dismissing appeal when district court had denied a motion to intervene on technical grounds but at the same time had invited the appellant to refile). Still, we easily can envision circumstances in which a denial of intervention that is nominally "without prejudice" nonetheless may be sufficiently conclusive to warrant immediate review. See, e.g., Conservation Law Found. of New Engl., Inc. v. Mosbacher, 966 F.2d 39, 41 (1st Cir. 1992). In this context, therefore, we are reluctant to accord talismanic significance to a trier's use of the term "without prejudice." Accord City of Milwaukee, 144 F.3d at 531 & n.14. Because the third prong of the collateral order test offers a more clear-cut basis for resolving the issue, we leave the questions surrounding the conclusiveness prong for another day.

This brings us to the third prong of the test: unreviewability. An order flatly denying a motion to intervene in a judicial proceeding is an immediately appealable collateral order. See 6 James Wm. Moore, Moore's Federal Practice ¶ 24.24[1], at 24-90 to 24-92 (3d ed. 2004); see, e.g., Pub. Serv. Co. v.

-14-

Patch, 136 F.3d 197, 204 (1st Cir. 1998) (reviewing an order denying intervention claimed as of right under Rule 24(a)). The central rationale for permitting immediate review is that once intervention has been denied, the putative intervenor "cannot appeal from any subsequent order or judgment in the proceeding." Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co., 331 U.S. 519, 524 (1947). Thus, in the absence of immediate appellate review, a denial of intervention becomes, in Cohen terms, "effectively unreviewable."

A denial of intervention in an EAB proceeding carries critically different consequences. As said, a party who is refused intervention in a court case cannot thereafter appeal from a final judgment. 6 Moore's Federal Practice, supra ¶ 24.24[1], at 24-92 & n.5.4 (collecting cases). Under the CWA, however, "any interested person," whether or not a party to the permit proceedings before the EAB, is entitled to judicial review of the final agency action (the regional administrator's issuance or denial of a permit).[1] See 33 U.S.C. § 1369(b)(1). While courts have read this statute to incorporate, at a minimum, the injury-in-

---

[1]This is a fairly typical provision in federal administrative schemes. See, e.g., 26 U.S.C. § 9011 (permitting judicial review of certain actions of the Federal Election Commission upon petition "by any interested person"); 33 U.S.C. § 2717 (authorizing judicial review of regulations promulgated under the Oil Pollution Act "upon application by any interested person"); see generally 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

fact requirement for Article III standing, see, e.g., Am. Forest & Paper Ass'n v. EPA, 154 F.3d 1155, 1158 (10th Cir. 1998); Montgomery Envtl. Coalition v. Costle, 646 F.2d 568, 578 (D.C. Cir. 1980), judicial review is not restricted to the parties in the EAB proceeding.

For present purposes, this distinction looms large. Assuming that Rhode Island meets the threshold "interested person" requirement — if it does not, then it hardly can complain about the denial of intervention — it will be entitled to appeal from the EPA's final permitting decision, even without intervenor status. See 33 U.S.C. § 1362(5) (defining "person" to include states). In the course of that appeal, the state can challenge not only the EAB's merits decision but also its decision to deny intervention. Cf. 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."). Therefore, the cases authorizing collateral review of denials of intervention in judicial proceedings have scant persuasive force here.

We are guided, instead, by the Supreme Court's opinion in Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370 (1987). There, the district court denied a neighborhood group's motion to intervene as of right and granted its motion for permissive intervention while placing restrictions on the group's ability to conduct discovery and assert new claims for relief. Id. at 373.

-16-

The group prosecuted an immediate appeal. In due course, the Supreme Court held that the grant of intervention, though severely circumscribed, was not an immediately appealable collateral order. Id. at 375. It emphasized the fact that the intervenor, although limited as to the scope of its involvement in the litigation, retained the power to appeal any final judgment and, in the process, could attack the conditions imposed by the lower court. Id. at 376. Distinguishing the case from those involving outright denials of intervention, the Court concluded that the intervenor could "obtain effective review of its claims on appeal from final judgment." Id. Consequently, the appellants failed to satisfy the third prong of the collateral order test. Id. at 375.

This emphasis on the ability vel non to prosecute an efficacious end-of-case appeal after a denial of intervention has not escaped notice. Precedent in this and other circuits draws the same distinction. See, e.g., Eng v. Coughlin, 865 F.2d 521, 524-27 (2d Cir. 1989); Kartell v. Blue Shield of Mass., Inc., 687 F.2d 543, 550 (1st Cir. 1982).

We find this line of authority compelling. The judicial review provisions of the CWA ensure that the denial of intervention will neither extinguish nor curtail Rhode Island's right to appeal upon the issuance of a final permit. This means, of course, that there is nothing unreviewable about the EAB's denial of intervention.

Of course, Stringfellow advisedly phrased the requirement, for purposes of the third prong of the collateral order test, in terms of whether an order was amenable to "effective review." 480 U.S. at 375 (emphasis supplied). The use of this adjective recognizes that, occasionally, an order may be technically subject to end-of-case review but that the appealing party's interests may not be capable of vindication at that late date. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985) (discussing need for immediate review of interlocutory orders refusing to grant qualified immunity); Abney v. United States, 431 U.S. 651, 660-62 (1977) (discussing need for immediate review of interlocutory orders rejecting claims of double jeopardy).

This qualification does not help Rhode Island. In Stringfellow, the Supreme Court held that the putative intervenors' interest in taking a more robust role in the proceedings, however substantial, would not be "irretrievably lost in the absence of an immediate appeal." 480 U.S. at 376 (citation omitted). So it is here: any harm that Rhode Island might suffer as a result of its relegation to amicus status can be adequately redressed on appeal from a final permitting decision. We explain briefly.

We have equated a showing of effective unreviewability with a showing of irreparable harm arising out of the postponement of appellate review. In re Recticel Foam, 859 F.2d at 1004. Rhode Island has made no such showing here. Although the EAB denied

-18-

Rhode Island's motion to intervene, the state retains the ability to take part in the proceedings as an amicus. That status confers upon it the same right to file briefs on both the evidentiary question and the merits as the parties possess. See In re USGen, supra, slip op. at 9-10. Unless there is an evidentiary hearing — and in that contingency, Rhode Island is free to renew its motion to intervene — those filings will end the parties' substantive participation. It is, therefore, unsurprising that Rhode Island has been unable to identify any cognizable harm that it stands to suffer at this stage of the proceedings by virtue of participating as an amicus rather than as an intervenor.[2] Even were we to accept Rhode Island's (counterfactual) assertion that it has been prejudiced by the distinction, we see no basis for concluding that this harm could not be vindicated adequately on judicial review of a final permitting decision. It follows inexorably that there is no theoretical foundation upon which to rest an invocation of the

---

[2]Rhode Island argues that an amicus does not have the same right to raise new issues as a party. Petitioner's Br. at 12. That may be true in a court case, see, e.g., Lane v. First Nat'l Bank, 871 F.2d 166, 175 (1st Cir. 1989), but there is nothing in the CWA's regulatory framework that ordains such a result. Furthermore, the EAB order explicitly provides that all participants in the proceedings are limited to those issues already raised in USGen's petition, drawing no distinction in that regard between amici and intervenors. See In re USGen, supra, slip op. at 9 n.14, 10 n.15. Rhode Island also suggests that it will not be permitted to file, or object to, motions. Petitioner's Reply Br. at 12. But there is nothing in the administrative scheme that restricts motion practice to parties and intervenors, and the EAB has indicated a willingness to allow amici to participate fully in the adjudication of all substantive motions.

collateral order doctrine.  See Stringfellow, 480 U.S. at 376; Kartell, 687 F.2d at 550.

To say that Rhode Island's interests will not be irretrievably prejudiced in the absence of an immediate appeal is not to say that postponing review until the occurrence of final agency action is cost-free.  By refusing to intercede at this stage, we introduce the prospect of duplicative proceedings should the denial of intervention eventually be deemed improvident.  That sort of cost is real, but it is an almost inevitable byproduct of the finality rule in ordinary litigation as well as in administrative adjudication.  Cf. R.R. Donnelley & Sons Co. v. FTC, 931 F.2d 430, 431 (7th Cir. 1991) ("If the cost, delay, and aggravation of litigation made an order final, the distinction between interlocutory and final decisions would collapse, and courts of appeals would be deluged.").  The finality requirement embodies a "preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by piecemeal appellate review." Richardson-Merrell, 472 U.S. at 430 (citation and internal quotation marks omitted).  This case is no exception.

## IV. CONCLUSION

We need go no further.[3] We do not minimize Rhode Island's interest in the purity of the waters of Mount Hope Bay — but Rhode Island has the ability to protect that interest adequately on an end-of-case appeal from whatever final permitting decision eventuates. Thus, its appeal fails to meet the unreviewability prong of the collateral order test. As said, unreviewability is a sine qua non for immediately appealable collateral orders. See Stringfellow, 480 U.S. at 375; Kartell, 687 F.2d at 550. Accordingly, we lack jurisdiction, in the present posture of the case, to hear and determine Rhode Island's complaint

---

[3]There is another potential ground for deeming the collateral order doctrine inapplicable in this case: the precise (and somewhat unorthodox) wording of the jurisdictional grant contained in 33 U.S.C. § 1369(b)(1)(F). Unlike, say, section 704 of the Administrative Procedure Act, 5 U.S.C. § 704 (which provides generally for judicial review of any "final agency action") or the counterpart provision found in the Clean Air Act, 42 U.S.C. § 7607(b)(1) (which provides for judicial review of regulations, orders, "or any other final action[s] of the Administrator"), the CWA restricts judicial review to actions taken "in issuing or denying any permit." 33 U.S.C. § 1369(b)(1)(F). Because judicial review is triggered only by actions "issuing or denying" permits and not by final agency actions generally, it is at least arguable that section 1369(b)(1)(F) may not be amenable to a pragmatic construction that allows for any judicial review before a final permitting decision is made. Cf. Appalachian Energy Group, 33 F.3d at 322 (suggesting that the CWA's text allows courts "to review only those categories of agency action identified" in the statute itself). This is an intellectually interesting point but because we decide that the collateral order doctrine, even if available, does not apply in this instance, we need not probe it more deeply.

that the EAB improperly prevented it from intervening in the permitting proceedings.[4]

**The petition for judicial review is dismissed without prejudice for want of appellate jurisdiction**.

---

[4]On July 23, 2004, while this opinion was at the printer's, the EAB denied USGen's motion for an evidentiary hearing, scheduled oral argument on the merits of the permitting decision, and granted Rhode Island the right to participate in those arguments (albeit as an amicus). Viewed collectively, these orders reinforce the conclusions reached in this opinion.