# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60291

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2019

Lyle W. Cayce
Clerk

LOUISIANA REAL ESTATE APPRAISERS BOARD,

> Petitioner

v.

FEDERAL TRADE COMMISSION,

> Respondent

On Petition for Review of an Order of the
Federal Trade Commission

Before KING, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:

The Louisiana Real Estate Appraisers Board asks the court to review an order of the Federal Trade Commission, arguing that the Commission erred in concluding that the Board could not assert its state-action immunity defense in the underlying administrative proceeding. This appeal is premature. Accordingly, we DISMISS the petition for review for lack of jurisdiction.

## I.

The Louisiana Real Estate Appraisers Board (the "Board") is a state agency tasked with licensing and regulating commercial and residential real estate appraisers and appraisal management companies. La. Stat. Ann. §§ 37:3395, 37:3415.21. Each of the Board's ten members is appointed by the Governor and confirmed by the state senate, and members are removable by

No. 18-60291

the Governor for cause. *Id.* § 37:3394. Of the ten members, four must be general appraisers, and two must be residential appraisers. § 37:3394(B)(2).

After Congress passed the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank"), requiring lenders to compensate fee appraisers "at a rate that is customary and reasonable for appraisal services performed in the market area of the property being appraised," 15 U.S.C. § 1639e(i)(1), the Louisiana legislature amended its own laws. Specifically, the Louisiana legislature amended its Appraisal Management Company Licensing and Regulation Act (the "AMC Act") to require that appraisal rates be consistent with § 1639e and its implementing regulations. La. Stat. Ann. § 37:3415.15(A). The legislature also gave the Board authority to "adopt any rules and regulations in accordance with the [Louisiana] Administrative Procedure Act necessary for the enforcement of [the AMC Act]." § 37:3415.21.

In the exercise of this power, the Board adopted Rule 31101, requiring that licensees "compensate fee appraisers at a rate that is customary and reasonable for appraisal services performed in the market area of the property being appraised and as prescribed by La. Stat. Ann. § 34:3415.15(A)." La. Admin. Code. tit. 46, § 31101. Unlike the federal regulations, which instruct that appraisal fees are "presumptively" customary and reasonable if they meet certain conditions, Rule 31101 prescribed three ways by which a licensed appraisal management company can establish that a rate is customary and reasonable. *Compare id., with* 12 C.F.R. § 226.42(f)(2), (3).

The Board published Rule 31101 in the Louisiana Register, solicited comments from the public, and submitted the Rule to the Louisiana House and Senate Commerce Committees for review. Neither chamber conducted a hearing. Therefore, under Louisiana law at the time, the Rule took effect 45 days after submission to the legislature. The Governor did not exercise his authority to veto the Rule.

2

No. 18-60291

In May 2017, the Federal Trade Commission ("FTC") issued an administrative complaint against the Board, alleging that it had "unreasonably restrain[ed] competition by displacing a marketplace determination of appraisal fees." Because Rule 31101 established an exclusive list of ways by which appraisal management companies could determine compensation for appraisers, the FTC alleged that the Rule "prevents [appraisal management companies] and appraisers from arriving at appraisal fees through bona fide negotiation and through the operation of the free market." Additionally, the FTC alleged that the Board's enforcement of the Rule unlawfully restrained price competition. In its answer, the Board argued, inter alia, that it was immune from federal antitrust liability.

After the FTC filed its complaint, the Governor of Louisiana issued an executive order adding oversight to the Board. Pursuant to the order, the Board must now submit any new customary-and-reasonable-fee regulation to the Louisiana Commissioner of Administration or the Commissioner's designee for approval, rejection, or modification. In addition, the Division of Administrative Law must preapprove certain Board enforcement activities. The Board thereafter re-issued a revised Rule 31101, following the same procedures it had undertaken in 2013 as well as the new procedures outlined in the Governor's executive order.

After the Board repromulgated its revised Rule 31101, it moved to dismiss the FTC's complaint. The Board argued that its postcomplaint measures eliminated the prior effects of the old Rule and provided for active supervision going forward. Thus, it argued, the complaint was moot. The same day, the FTC moved for partial summary decision on the Board's state-action defenses, arguing that the Board is controlled by active market participants and the state's supervision was still inadequate.

3

No. 18-60291

The Commission[1] denied the motion to dismiss and granted the FTC's motion. The Commission has not issued a final cease-and-desist order. The Board petitions us for review, arguing that it is immune from the administrative action pursuant to the state-action doctrine.

## II.

Although the Board urges us to reach the merits of its appeal, we must first "assure ourselves of our own federal subject matter jurisdiction." *Keyes v. Gunn*, 890 F.3d 232, 235 n.4 (5th Cir. 2018). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Texas v. Travis Cty., Tex.*, 910 F.3d 809, 811 (5th Cir. 2018) (quoting *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). Therefore, to adjudicate this appeal, there must be a statute allowing us to review the Commission's order on a motion to dismiss or motion for partial summary decision.

The Board seemingly concedes that the Federal Trade Commission Act ("FTCA") does not expressly authorize us to hear this appeal. Title 15 of the United States Code, Section 45 provides: "Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States . . . ." Accordingly, we have noted that "[t]he jurisdiction of this Court to review an order of the Federal Trade Commission . . . . arises *only* from a cease and desist order entered by the Commission." *Texaco, Inc. v. FTC*, 301 F.2d 662, 663 (5th Cir. 1962) (emphasis added). Therefore, because the Commission's order denying the Board's motion to dismiss and granting the FTC's motion for partial summary

---

[1] We refer to the FTC acting in its role as complaint counsel as "the FTC" and the FTC acting in its adjudicatory role as the "Commission."

decision is not a cease-and-desist order, the statute does not expressly authorize us to exercise jurisdiction here.

Nonetheless, the Board argues that we have jurisdiction under the collateral-order doctrine. The collateral-order doctrine first emerged in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), in which the Supreme Court considered the application of 28 U.S.C. § 1291. Section 1291 instructs that the courts of appeals "shall have jurisdiction of appeals from all *final decisions* from the district courts." § 1291 (emphasis added). The Court rejected the argument that the statute only allows appeals from final judgments. *See Cohen*, 337 U.S. at 545-46. Instead, the Court held that there is a "small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546-47. Thus, a district court's order is reviewable if it "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).[2]

In concluding that some intermediate orders are immediately appealable, the *Cohen* Court reasoned that "[t]he effect of [§ 1291] is to disallow appeal from any decision which is tentative, informal or incomplete." 337 U.S. at 546. Therefore, when a district court's decision is final, a court of appeals may undertake review of that decision, even if that decision does not end the

---

[2] The Board notes that we have held that a district court's rejection of a state-action defense is a collateral order. *See Martin v. Mem'l Hosp. at Gulfport*, 86 F.3d 1391, 1393-97 (5th Cir. 1996). The FTC disputes the vitality of *Martin*, but we need not address that question because we conclude that the FTCA provision allowing direct appeals to the court of appeals does not include collateral orders.

litigation. *Id.* But the Court emphasized that § 1291 only permits review of *final* decisions; when a district court's decision is "but steps towards final judgment," the statute does not permit an appeal. *Id.* In subsequent cases, the Court has explained that the collateral-order doctrine is "best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Cohen*, 337 U.S. at 546).

But *Cohen* does not resolve this case. *Cohen* only holds that § 1291 permits collateral review of *district court* decisions. Here, we must determine whether the FTCA permits collateral review of the Commission's decisions. As an initial matter, we note that *Cohen*'s rationale can be applied to administrative decisions, and courts have applied *Cohen*'s "practical construction" reasoning to other statutes with similar language. For example, courts have recognized that the Administrative Procedure Act's ("APA") "final agency action" requirement is analogous to § 1291's "final decision" requirement. *See Chehazeh v. Attorney Gen.*, 666 F.3d 118, 135 (3d Cir. 2012) ("A provision analogous to Section 704's 'final agency action' requirement is found in 28 U.S.C. § 1291, which permits appellate review only of 'final decisions' of a district court."). Therefore, the APA can reasonably be interpreted as permitting courts to undertake collateral review of agency decisions that are conclusive, but do not end the agency proceeding. Likewise, courts have applied *Cohen*'s reasoning to the Mine Act, which gives courts of appeals jurisdiction to review "an order of the" Federal Mine Safety and Health Review Commission. *Meredith v. Fed. Mine Safety & Health Review Comm'n*, 177 F.3d 1042, 1047-51 (D.C. Cir. 1999) (quoting 30 U.S.C. § 816(a)(1)).

We thus consider whether the language of the FTCA can be interpreted to allow appellate review of collateral orders. The FTCA's language is narrower than the above examples, only authorizing the courts of appeals to review

"cease and desist" orders. 15 U.S.C. § 45(c). This language is plainly more restrictive than those statutes authorizing judicial review of "final decisions," "final agency action," or "an order." Given that Congress has expressly limited our jurisdiction to review of cease-and-desist orders, we cannot consider the Board's petition for review of the Commission's denial of its motion to dismiss and granting of the FTC's motion for partial summary decision.

Admittedly, other circuits have taken a different approach when considering whether the collateral-order doctrine applies to similarly restrictive statutes. For example, in *Rhode Island v. EPA*, 378 F.3d 19 (1st Cir. 2004), the First Circuit exercised jurisdiction to hear an appeal of a collateral order rendered under the Clean Water Act. In doing so, the court held that the collateral-order doctrine is "generally applicable" to administrative decisions for three reasons. First, the court noted that "the Supreme Court has strongly signaled . . . that *Cohen*'s rationale carries over to administrative determinations." 378 F.3d at 24. Second, the court found "no overriding policy reason to apply a wholly different rule of finality to review of agency determinations." *Id.* And finally, the court found that "every circuit to have considered the question to date has determined (often with little or no analysis) that the collateral order doctrine applies to judicial review of administrative determinations." *Id.* at 25. The court acknowledged that the plain text of the relevant Clean Water Act provision allowed appeals only from the "issuance or denial" of a pollution-discharge permit. *Id.* at 22-23; *see* 33 U.S.C. § 1369(b)(1)(F). Though this text is not amenable to *Cohen*'s "practical construction," the court did not think the text foreclosed application of the collateral-order doctrine.

We decline to adopt the First Circuit's reasoning. We agree that the collateral-order doctrine may apply to judicial review of some administrative decisions, as illustrated above in our discussion of the APA and the Mine Act.

But we disagree that courts of appeals may intervene in administrative proceedings as a general matter. This approach conflicts with *Cohen*, which relied on a "practical construction" of § 1291's statutory language; we must look to the text of the statute at hand to determine whether Congress has authorized us to review the agency's decision.

Thus, the argument that "every circuit" has applied the collateral-order doctrine to administrative determinations is overly broad. Although courts of appeals have found the collateral-order doctrine to apply to *some* administrative proceedings, the cases do not prove that the collateral-order doctrine will necessarily apply to every administrative proceeding. As the First Circuit pointed out, most circuits have applied the collateral-order doctrine in the administrative context with "little or no analysis." *Rhode Island*, 378 F.3d at 25. Some of the cases the First Circuit cited concerned the Mine Act which, as discussed above, contains language that mirrors § 1291's "final decision" language. *E.g.*, *Meredith*, 177 F.3d at 1050-51; *Jim Walter Res., Inc. v. Fed. Mine Safety & Health Review Comm'n*, 920 F.2d 738, 744 (11th Cir. 1990). The other decisions the First Circuit cited have language more specific than the APA or the Mine Act, but still broader than the FTCA. *E.g.*, *Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor*, 187 F.3d 1174, 1179-80 (10th Cir. 1999) (applying collateral-order doctrine to statute allowing judicial review of "order[s] issued under paragraph (2)," 42 U.S.C. § 300j-9(i)(3)(A), which in turn details procedures for entire administrative proceeding); *Carolina Power & Light Co. v. U.S. Dep't of Labor*, 43 F.3d 912, 916 (4th Cir. 1995) (similar); *Donovan v. Oil, Chem., & Atom. Workers Int'l Union & Its Local 4-23*, 718 F.2d 1341, 1344-45 (5th Cir. 1983) (similar). But none of the cases the First Circuit cited concerns the FTCA's specific language expressly restricting judicial review to "an order of the Commission to cease

and desist." § 45(c). We need not comment therefore on the approaches taken in prior decisions to other statutes.

Although the First Circuit, the Board, and amici writing in support of the Board identify practical reasons for permitting collateral-order review in the administrative context, these arguments do not resolve our lack of jurisdiction. Even when faced with compelling reasons to intervene, we cannot act without authority from Congress or the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." (internal citations omitted)).

In sum, *Cohen* held that § 1291's use of "final decision" could be "practically construed" to give a court of appeals authority to hear an appeal from a district court's final decision on an issue, even if the decision did not resolve the entire case. But *Cohen*'s reasoning cannot be used to stretch the limitations of the FTCA, in which Congress authorized us to hear appeals only from the Commission's cease-and-desist orders. The Board does not argue that we have jurisdiction under another statute, and we are aware of no statute that allows direct appeal to the court of appeals at this stage of the case.[3] Therefore, we are without jurisdiction to hear this appeal.

## III.

For the foregoing reasons, the petition is DISMISSED for lack of jurisdiction.

---

[3] The Board does not argue that it seeks review under the APA, nor could it; it brought this appeal directly in this court, bypassing the district court. *See* 5 U.S.C. § 704. Unlike the FTCA, § 704 does not allow direct appeals from agency proceedings to the courts of appeals. Therefore, if the Board were to appeal the Commission's decision under the APA, that action would have to originate in the district court under its federal-question jurisdiction. *See* 28 U.S.C. § 1331.