**[J-13A-2024, J-13B-2024, J-13C-2024 and J-13D-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| CLIFFORD COLE, PAMELA WEST, BRIAN WEIRBACK, KATHY WEIRBACK, TODD SHELLY AND CHRISTINE SHELLY, | : | No. 21 EAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated June |
| Appellees | : | 15, 2021 at No. 1577 CD 2019, |
| | : | Reversing and Remanding the |
| | : | Order of the Pennsylvania |
| | : | Environmental Hearing Board dated |
| v. | : | October 9, 2019 at No. 2019-046-L. |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | ARGUED:  March 5, 2024 |
| ENVIRONMENTAL PROTECTION, | : | |
| | : | |
| Appellant | : | |

| | | |
|---|---|---|
| WEST ROCKHILL TOWNSHIP, | : | No. 22 EAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court dated June |
| | : | 15, 2021 at No. 1595 CD 2019, |
| v. | : | Reversing and Remanding the |
| | : | Order of the Pennsylvania |
| | : | Environmental Hearing Board dated |
| DEPARTMENT OF ENVIRONMENTAL | : | September 25, 2019, at No. 2019- |
| PROTECTION, | : | 039-L. |
| | : | |
| Appellant | : | ARGUED:  March 5, 2024 |

| | | |
|---|---|---|
| CLIFFORD COLE, PAMELA WEST, BRIAN WEIRBACK, KATHY WEIRBACK, TODD SHELLY AND CHRISTINE SHELLY | : | No. 77 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated June |
| | : | 15, 2021 at No. 1577 CD 2019, |
| v. | : | Reversing and Remanding the |
| | : | Order of the Pennsylvania |
| | : | Environmental Hearing Board dated |
| PENNSYLVANIA DEPARTMENT OF | : | October 9, 2019 at No. 2019-046-L |
| ENVIRONMENTAL PROTECTION | : | |
| | : | ARGUED:  March 5, 2024 |

APPEAL OF: ADELPHIA GATEWAY, LLC    :

WEST ROCKHILL TOWNSHIP              :    No. 78 MAP 2023
                                    :
                                    :    Appeal from the Order of the
            v.                      :    Commonwealth Court dated June
                                    :    15, 2021 at No. 1595 CD 2019,
                                    :    Reversing and Remanding the
DEPARTMENT OF ENVIRONMENTAL         :    Order of the Pennsylvania
PROTECTION                          :    Environmental Hearing Board dated
                                    :    September 25, 2019, at No. 2019-
                                    :    039-L
APPEAL OF:  ADELPHIA GATEWAY, LLC   :
                                    :    ARGUED:  March 5, 2024

## OPINION

**JUSTICE WECHT**                        **DECIDED: January 22, 2025**

This appeal lies at the intersection of state administrative and federal judicial jurisdiction, implicating the supremacy of federal law[1] and implied federal preemption of state regulation.[2]  The cases involved are factually complex, but the question is straightforward: May the challenger of a decision by Pennsylvania's Department of Environmental Protection ("DEP") concerning a permitting decision under the federal

---

[1]    The Supremacy Clause of the United States Constitution provides that the Constitution and the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.

[2]    "Under the principles of field (or implied) preemption, state law may be displaced 'if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.'"  *Werner v. Plater-Zyberk*, 799 A.2d 776, 787 (Pa. Super. 2002) (quoting *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 381 (3d Cir. 1999)).

Natural Gas Act ("NGA")[3] seek review of the DEP's decision before Pennsylvania's Environmental Hearing Board ("EHB"), or does jurisdiction over the appeal lie exclusively with the United States Court of Appeals for the Third Circuit?  The Commonwealth Court held that the challenger may seek review directly before the EHB.  We affirm.

## I.    Environmental Regulation in Pennsylvania

In Pennsylvania environmental law, the DEP is the "executive branch, assigned various duties to implement and enforce environmental statutes and regulations."[4] Among its delegated duties is the enforcement of the requirements of the federal Clean Air Act ("CAA"),[5] as well as the related enforcement of Pennsylvania's Air Pollution Control Act ("APCA").[6]  The CAA obligates "Each State" to adopt, "for any air pollutant," a state implementation plan ("SIP") "which provides for implementation, maintenance, and enforcement of [the national] primary [ambient air quality] standard in each air quality control region (or portion thereof) within such State."[7]

---

[3]     *See* 15 U.S.C. §§ 717-717z.

[4]     *Tire Jockey Serv., Inc. v. DEP*, 915 A.2d 1165, 1185 (Pa. 2007) (quoting *DEP v. N. Am. Refractories Co.*, 791 A.2d 461, 462 (Pa. Cmwlth. 2002)).

[5]     *See* 42 U.S.C. §§ 7401-7671q.

[6]     *See* Act of Jan. 8, 1960, P.L. 2119, 35 P.S. §§ 4001-4015; *see also* 35 P.S. § 4004 ("The department shall have the power and its duty shall be to—(1) Implement the provisions of the Clean Air Act in the Commonwealth.").

[7]     42 U.S.C. § 7410(a)(1).  An account of the Commonwealth's SIP is provided in the joint brief of *amici curiae* Delaware Riverkeeper Network, Citizens for Pennsylvania's Future, Clean Air Council, and Mountain Watershed Association.  *See* Riverkeeper Br. at 9-11.

While the DEP plays the executive part, Pennsylvania's Environmental Quality Board, responsible for administrative rule-making, plays an essentially legislative role.[8] Filling out this paradigm, the EHB serves as "an independent quasi-judicial agency."[9] As such, the EHB "has the power and duty to hold hearings and issue adjudications under" the Administrative Agency Law[10] "on orders, permits, licenses or decisions of the [DEP]."[11] Critically, while a given action implicating the CAA and regulated under the NGA may begin with the DEP, none of the DEP's decisions or actions "adversely affecting a person shall be final as to that person until the person has had the opportunity to appeal the action to the [EHB] under subsection (g) ["Procedure"]. If a person has not perfected an appeal in accordance with the regulations of the [EHB], the [DEP's] action shall be final as to the person."[12] The relevant regulation affords "[t]he person to whom the action of the [DEP] is directed or issued" thirty days after receipt of notice of the action to seek EHB review, and gives any other aggrieved person thirty days after publication of the action in the Pennsylvania Bulletin or thirty days after actual notice, if the action is not

---

[8]     *Tire Jockey*, 915 A.2d at 1185.

[9]     35 P.S. § 7513(a); *see generally* Environmental Hearing Board Act of 1988, Act of July 13, 1988, P.L. 530, No. 94, 35 P.S. §§ 7511-7516. From 1971-1988, the EHB was "an administrative body within DEP." *Cole v. DEP*, 257 A.3d 805, 809 (Pa. Cmwlth. 2021); *see generally* Act of Dec. 3, 1970, Pub. L. No. 834 (repealed 1988).

[10]    *See*, 2 Pa.C.S. §§ 501-08.

[11]    35 P.S. § 7514(a).

[12]    *Id.* § 7514(c).

published.[13]  EHB decisions are appealable in the first instance to the Commonwealth Court[14] and thereafter to this Court on a discretionary basis.[15]

Although the legislature and this Court have employed the terminology of "appeals" to the EHB, as in Section 7514 and in *Tire Jockey*,[16] EHB proceedings have trial-like qualities—in particular the EHB's discretion to take evidence beyond that of record from the original submissions to the DEP.  "[T]he EHB's duty is to determine if [the] DEP's action can be sustained or supported by the evidence taken by the EHB."[17]

## II.    The Factual and Procedural Background

Why does this matter?  Here is why: the Commonwealth Court held that an appeal to the EHB from a DEP decision is not a "civil action" as that term is used in the NGA provision that Appellants maintain preempts EHB review in this case.  The NGA provision states, in relevant part, as follows:

> The United States Court of Appeals for the circuit in which a facility . . . is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over *any civil action* for the review of an order or action of a federal agency . . . or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence or approval . . . required under Federal law.[18]

---

[13]     25 Pa. Code § 1021.52.

[14]     42 Pa.C.S. § 763(a)(1).

[15]     *Id.* § 724.

[16]     *See Tire Jockey*, 915 A.2d at 1177 ("[T]he EHB held hearings on TJS's *appeal* of the DEP January 2001 Order and the DEP permit denial." (emphasis added)).

[17]     *Pa. Trout v. DEP*, 863 A.2d 93, 106 (Pa. Cmwlth. 2004).

[18]     15 U.S.C. § 717r(d)(1) (emphasis added).

Due to its conclusion that an EHB appeal is not a "civil action," the Commonwealth Court ruled that the NGA does not preempt EHB consideration of the challenge to the DEP approval here at issue. We granted allowance of appeal in order to consider this jurisdictional question.[19]

### A. The Administrative Proceedings

At the heart of this matter is Intervenor-Appellant Adelphia Gateway's ("Adelphia") proposed Quakertown Compressor Station in West Rockhill Township, Bucks County, which is part of the Adelphia Gateway Project. That project "involves the purchase, construction, and operation of an interstate natural gas transmission infrastructure between Pennsylvania and Delaware."[20] In furtherance of this project, Adelphia first obtained a certificate of public convenience from FERC under the NGA,[21] which generally—and in this case—is conditioned on obtaining applicable state approvals.[22] Separately, Adelphia sought approval for the station from the Pennsylvania DEP under the CAA and APCA.

---

[19] The questions as to which we granted review in the two cases captioned in this decision are numerous and redundant. *See Cole v. DEP*, 302 A.3d 1194 (Pa. 2023) (*per curiam*); *Cole v. DEP*, 302 A.3d 1195 (Pa. 2023) (*per curiam*). They are all fairly encompassed in one question stated in the latter order: "Did the Commonwealth Court err in deciding that the [EHB] has jurisdiction to hear appeals of DEP actions on projects regulated by the Federal Energy Regulatory Commission [("FERC")] under the [NGA] when the [NGA] grants the Third Circuit original and exclusive jurisdiction to review state agency actions related to interstate domestic energy projects?" *Cole*, 302 A.3d 1195, 1195; *see also Cole*, 257 A.3d at 808 (identifying the lone question as "whether [Section 717r(d)(1)] divests the EHB of its subject matter jurisdiction to hear [Appellees'] appeal from DEP's approval of the Quakertown Compressor Station[?]").

[20] *Cole*, 257 A.3d at 809.

[21] *See* 15 U.S.C. § 717f(c).

[22] *See Twp. of Bordentown v. FERC*, 903 F.3d 234, 243 (3d Cir. 2018).

On April 19, 2019, the DEP approved the station, but it noted that this approval was subject to review by the EHB if review was sought within thirty days of receipt of the notice of approval.[23] Challenger-Appellees in these cases, West Rockhill and a group of individual opponents led by Clifford Cole, filed separate appeals of the approval before the EHB, with the DEP as the nominal opponent. Adelphia intervened in both cases, aligned with the DEP in defense of its permits.

Adelphia filed motions to dismiss in both cases, contending that, because DEP approval was a federally delegated permitting decision under the CAA, review was committed exclusively to the Third Circuit under Section 717r(d)(1)'s conferral of "original and exclusive jurisdiction over any civil action for the review of an order or action of a . . . State administrative agency acting pursuant to Federal law" in granting or denying a permit under the NGA.[24] Thus, on Adelphia's account, the EHB lacked jurisdiction over Appellees' appeals.

The EHB agreed, and it dismissed both cases. On the EHB's account, "[t]he Third Circuit has now repeatedly ruled [in the *Riverkeeper* cases] that it has original and exclusive jurisdiction to review [DEP]-issued permits that are required under" the NGA.[25]

---

[23]    *Cole*, 257 A.3d at 810.

[24]    15 U.S.C. § 717r(d)(1).

[25]    *W. Rockhill Twp. v. DEP*, EHB Docket No. 2019-039-L, at 2 (Sept. 25, 2019) (citing *Del. Riverkeeper Network v. Sec'y, DEP*, 783 Fed. App'x 124 (3d Cir. 2018) (*Riverkeeper IV*); *Del. Riverkeeper Network v. Sec'y, DEP*, 903 F.3d 65 (3d Cir. 2018) (*Riverkeeper III*); *Del. Riverkeeper Network v. Sec'y, DEP*, 870 F.3d 171 (3d Cir. 2017) (*Riverkeeper II*), *Del. Riverkeeper Network v. Sec'y, DEP*, 833 F.3d 360 (3d Cir. 2016) (*Riverkeeper I*)) (EHB decisions may be searched by docket or party name at http://ehb.courtapps.com/public/commonsearch_ehb.php.). *Riverkeeper I* was decided relative to both Pennsylvania and NJ law, while *Riverkeeper II*, *III*, and *IV* involved (continued…)

The EHB acknowledged a Third Circuit case involving New Jersey law that might be read to the contrary,[26] but maintained that the *Riverkeeper* cases controlled. The EHB saw

> no legitimate basis for distinguishing the [DEP's CAA approval] from the other governmental actions at issue in the *Riverkeeper* cases. Because the [DEP's] issuance of the plan approval for the FERC-regulated Quakertown compressor station is required by federal law and [is] issued pursuant in part to federal law, the *Riverkeeper* cases compel us to conclude that its review is subject to the exclusive jurisdiction of the Third Circuit.[27]

Accordingly, the EHB dismissed Appellants' appeal in the *West Rockhill* litigation in September 2019. A couple of weeks later, the EHB summarily dismissed the appeal in the parallel *Cole* litigation, with a citation to its decision in *West Rockhill Township.*[28]

## B. The Commonwealth Court Appeal

Present Appellees—as well as West Rockhill, which for reasons explained below is not participating in this appeal—appealed the EHB's dismissals to the Commonwealth Court, which—like the EHB—explained its ruling at length in one of the instant cases and resolved the other by cross-referencing the first. Here, however, the fully elaborated decision came in *Cole* rather than in *West Rockhill.*[29] In *Cole*, after painstakingly reviewing the statutory texts and the cases relied upon by the EHB, the court reversed

---

Pennsylvania law. Notably, the EHB wholly elided the statutory phrase "civil action" from this statement.

[26] *Id.* at 3 (citing *Bordentown*, 903 F.3d at 268 (rejecting Third Circuit preemption of administrative review under Section 717r(d)(1) because preemption applies only to "civil actions" brought before a court of law or equity)). We review *Bordentown* at length below.

[27] *Id.* at 3-4.

[28] *Cole v. DEP*, EHB Docket No. 2019-046-L (Oct. 9, 2019).

[29] *See W. Rockhill Twp. v. DEP*, 1595 C.D. 2019, 2021 WL 2426014 (Pa. Cmwlth. June 15, 2021) (*en banc*) (unpublished).

the EHB's jurisdiction-based dismissal and remanded to the EHB for full substantive review of Appellees' challenges.

In explaining its decision, the Commonwealth Court began by noting that it is not bound by lower federal court decisions—even regarding interpretations of federal statutes; only the United States Supreme Court's interpretations bind state courts.[30] Nonetheless, the court echoed the *Riverkeeper* decisions in finding that NGA Section 717r(d)(1) unambiguously conferred upon the United States Courts of Appeals original and exclusive jurisdiction over any civil action challenging a final order of a state agency regarding approvals (or denials) relative to projects governed by the NGA.[31] In the relevant part of *Riverkeeper I*, the Commonwealth Court observed, the question was not whether the underlying action was civil, but, rather, whether it implicated federal law at all.[32] The Third Circuit concluded that the issue in that case did involve federal law such that it had jurisdiction under Section 717r(d)(1). As well, the Commonwealth Court asserted, the underlying action in that case undisputedly was civil in nature.[33] Meanwhile,

---

[30] *Cole*, 257 A.3d at 813; *see Hall v. PBPP*, 851 A.2d 859, 865 (Pa. 2004) (Op. Announcing the Judgment of the Court) ("Within our federal system of governance, there is only one judicial body vested with the authority to overrule a decision that this Court reaches on a matter of federal law: the United States Supreme Court."). The quoted language in *Hall*, and the detailed analysis therein of the question, appeared in an opinion expressing the views of three of seven Justices. However, the three dissenting Justices shared the view that the lower federal courts' interpretations of federal law have only persuasive value in this Court. *See Hall*, 851 A.2d at 865 (Cappy, J., dissenting) ("Like the majority, I agree that a decision of an inferior federal court should be treated by this court as persuasive, but not binding, authority . . . .").

[31] *Cole*, 257 A.3d at 815.

[32] *Id.*

[33] *Id.* ("[The] challenge [in *Riverkeeper I*] was, based on the definition above, unquestionably a 'civil action.'").

*Riverkeeper II* concerned the finality of a Pennsylvania DEP order for purposes of invoking the Court of Appeals' jurisdiction at all, not whether that jurisdiction over an administrative action *excluded* state administrative jurisdiction.[34]

In *Riverkeeper III*, on the Commonwealth Court's apt account, the Third Circuit took up a question related to—but not taken up in—*Riverkeeper I*: whether United States Court of Appeals jurisdiction "was *limited* to final agency actions 'and how such a requirement would interact with Pennsylvania's administrative scheme.'"[35] Notably, the finality requirement at issue in *Riverkeeper III* was not a matter of statutory law, but rather a judicial overlay arising from the federal courts' general reluctance to intrude upon ongoing state-level administrative processes.[36]

Once the *Riverkeeper III* court determined that finality of an administrative action was a threshold condition for NGA jurisdiction—a principle it drew from *Berkshire Environmental* and other authorities—it turned to consider whether the Pennsylvania DEP's order under challenge was final in the relevant sense. The Commonwealth Court explained:

> Applying the federal standard, the Third Circuit made several observations. It noted that once DEP makes a permitting decision, that decision is the final decision *of DEP* on the matter. *Riverkeeper III*, 903 F.3d at 72. Aggrieved parties may appeal that final agency action to the EHB, and final decisions of the EHB may be appealed to [the Commonwealth] Court. *Id.* Nonetheless, the Third Circuit took special note of Section 4(d)(1) of the EHB Act, 35 P.S. § 7514(d)(1), which provides that appeals to the EHB

---

[34]    *Id.* at 816.

[35]    *Id.* at 816-17 (emphasis added) (quoting *Riverkeeper III*, 903 F.3d at 68).

[36]    *See Riverkeeper III*, 903 F.3d at 70-71 (citing a "well-settled, strong presumption that judicial review will be available only when agency action becomes final" (internal quotation marks omitted) (quoting *Berkshire Env't Action Team, Inc. v. Tenn. Gas Pipeline Co.*, 851 F.3d 105, 109 (1st Cir. 2017) [hereinafter "*Berkshire Environmental*"])).

"shall [not] act as an automatic supersedeas." *Id.* (quoting 35 P.S. § 7514(d)(1)). The Third Circuit also noted that the EHB is an administrative agency independent of DEP, which reviews DEP's decisions *de novo. Id.*

Returning to the federal definition of finality, the Third Circuit concluded that DEP's permitting decision was the final action of DEP on the matter and was immediately effective regardless of the filing of an appeal with the EHB. In doing so, the Third Circuit distinguished the DEP permitting decision, which is "a final order that could be overturned in the event of an appeal," from "a provisional order that could become final in the absence of an appeal." *Id.* at 73.

\* \* \* \*

"[F]inality," the Third Circuit opined, "is 'conceptually distinct' from the related issue of exhaustion of administrative remedies." *Id* at 74. . . . The Third Circuit noted that the petitioners did not argue that the Third Circuit lacked jurisdiction due to a failure to exhaust appeals to the EHB. *Id.*

\* \* \* \*

Concluding its analysis of the jurisdictional question, the Third Circuit held:

> *Notwithstanding the availability of an appeal to the EHB*, [DEP]'s issuance of a Water Quality Certification was final in precisely the most important ways. . . . [DEP's] action presents all the "traditional hallmarks of final agency action," and we have exclusive jurisdiction to hear any "civil action for the review" of such decisions.

*Id.* at 74-75 (emphasis added) (quoting *Riverkeeper II*, 870 F.3d at 178).[37]

Ultimately, the Commonwealth Court distilled from *Riverkeeper III* two holdings: (1) "Judicial review under Section 717r(d)(1) is limited to *final* state agency actions that fall within the scope of the provision"; and (2) "for purposes of federal law, a DEP permitting decision that falls within the scope of the provision is as final for review by the

---

[37] *Cole*, 257 A.3d at 817-18 (some citations modified, others omitted). We note that, were this strictly a matter of state law, exhaustion would have been required. *See, e.g., Empire Sanitary Landfill, Inc. v. DER*, 684 A.2d 1047, 1053-54 (Pa. 1996). However, failure to exhaust appears only to affect the availability of state judicial review, not federal jurisdiction, at least under NGA Section 717r as interpreted by the Court of Appeals.

Third Circuit as it is final for review by the EHB."[38]  The Commonwealth Court also underscored what the *Riverkeeper III* court appeared to say: that nothing in those cases suggested that Third Circuit jurisdiction over DEP orders, final or otherwise, preempted *administrative* appeals to the EHB, as distinct from "civil actions."[39]

Taking as granted this finality requirement as well as the characterization of DEP approval as "final" notwithstanding any EHB proceedings, the *Cole* court turned its focus to the meaning of "any civil action" as that term is used in the NGA, a question that it found unresolved by the *Riverkeeper* cases.  The court identified this question as critical (and ultimately dispositive) because the "original and exclusive" jurisdiction conferred by NGA Section 717r is granted expressly with respect to "civil actions."  With that redirected attention came the court's interest in the Third Circuit's *Bordentown* decision.  There, the Court of Appeals held that "a 'civil action' refers only to civil cases brought in courts of law or equity and does not refer to hearings or other quasi-judicial proceedings before administrative agencies."[40]  Notwithstanding a structural difference between New Jersey's and Pennsylvania's administrative regimes—New Jersey's DEP ("NJDEP") and its administrative review body are under the same departmental umbrella, while the DEP

---

[38]    *Cole*, 257 A.3d at 818.

[39]    *Id.*; *see Riverkeeper III*, 903 F.3d at 74 ("Notwithstanding the availability of an appeal to the EHB, [the DEP's] issuance of a Water Quality Certification was final in precisely the most important ways . . . .").  The court summarily described *Riverkeeper IV* as simply reinforcing *Riverkeeper III*'s conclusion about Circuit Court jurisdiction.  We agree that *Riverkeeper III* suffices to stand for the relevant holdings of *Riverkeeper IV*.  *See Cole*, 257 A.3d at 818 ("*Riverkeeper IV* . . . offer[s] nothing more, as [the Third Circuit] simply reference[s] and incorporate[s] the decision in *Riverkeeper III* to reject ripeness challenges to [its] jurisdiction.").

[40]    *Bordentown*, 903 F.3d at 267; *see Cole*, 257 A.2d at 814.

and EHB are independent agencies in Pennsylvania—the Commonwealth Court found them analogous on the quoted point. Regardless of whether the EHB was under the same agency umbrella as DEP or operated independently, proceedings before it were administrative rather than civil in nature. As such, they could not be preempted by a statute that concerned only jurisdiction over "civil actions."

To similar effect are various other rulings of this Court. In *East v. WCAB*,[41] for example, this Court interpreted "civil action," a statutorily undefined term, to exclude "administrative actions, such as workers' compensation proceedings."[42] In that case, after surveying hundreds of uses of "civil action" in various statutes, we observed that evidence abounded of the legislature's intent to distinguish civil actions from "administrative proceedings," with civil actions restricted to those "commenced and conducted in a court of record, involving traditional common law claims for damages or equitable relief governed by the Pennsylvania Rules of Civil Procedure."[43] EHB proceedings, the Commonwealth Court went on to explain in this case, do not resemble civil actions so defined, notwithstanding their trial-like elements. As such, they fall on the administrative side of the line, outside the preemptive reach of United States Court of Appeals jurisdiction under the NGA.[44]

---

[41]    828 A.2d 1016 (Pa. 2003).

[42]    *Cole*, 257 A.3d at 814; *see East*, 828 A.2d at 1022-23.

[43]    *Cole*, 257 A.3d at 815 (quoting *East*, 828 A.2d at 1021-22 (footnotes collecting statutory examples omitted)).

[44]    *Id.* ("Petitioners' appeal to the EHB is an administrative proceeding, distinct from a civil action, and it lies properly before the EHB under Pennsylvania law.").

### C. The Parallel Federal Litigation

After the Commonwealth Court decisions in *Cole* and *West Rockhill* issued, the DEP and Adelphia filed petitions for allowance of appeal before this Court. At nearly the same time, Adelphia filed suit in the United States District Court for the Middle District of Pennsylvania seeking declaratory judgment to the effect that the EHB correctly ruled that it lacked jurisdiction over Cole's appeal—precisely the subject of the appeal before this Court. In November 2021, the District Court ruled, *inter alia*, that the Commonwealth Court's ruling on that question collaterally estopped Adelphia from seeking relief in the District Court and dismissed Adelphia's suit.[45]

Adelphia appealed that decision to the United States Court of Appeals for the Third Circuit. On March 14, 2023, the Court of Appeals affirmed the District Court's decision dismissing Adelphia's federal suit, reaffirming the Commonwealth Court's jurisdiction to hear the appeal of the EHB's dismissal, and granting full faith and credit to the Commonwealth Court's ruling that EHB jurisdiction would lie, notwithstanding the then-pending petitions for allowance of appeal before this Court.[46] "When a party has its day

---

[45]   *See Adelphia Gateway, LLC v. Pa. EHB*, 1:21-CV-1241, 2021 WL 5494286, at *9 (M.D. Pa. Nov. 23, 2021).

> The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Off. of Disciplinary Couns. v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005).

[46]   *See Adelphia Gateway, LLC v. Pa. EHB*, 62 F.4th 819, 826-28 (3d Cir. 2023).

in state court and loses," explained the Third Circuit in *Adelphia*, "it is not permitted a do-over in federal court. Were it otherwise . . . lower federal courts would sit as quasi-courts of appeals over state courts."[47]

## III. The EHB Has Jurisdiction Over the Underlying Appeal

On August 23, 2023, this Court issued its order granting the Appellants' petitions for allowance of appeal in the two cases now at bar.[48, 49]

### A. The Governing Standards

This case calls upon us first and foremost to interpret Section 717r(d)(1) of the NGA.

> "The construction of a federal statute is a matter of federal law." *Council 13, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO ex rel. Fillman v. Rendell*, 986 A.2d 63, 80 (Pa. 2009). Pursuant to federal rules of statutory construction, the courts consider the particular statutory language, as well as the design of the statute and its purposes in determining the meaning of a federal statute. *Id.* (citing *Crandon v. United States,* 494 U.S. 152, 158 (1990)). But, if the [statute's] language is clear, we should refrain from searching other sources in support of a contrary result. *See Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 228 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable."); *Carter v. United States,* 530 U.S. 255, 271 (2000) (statutory interpretation "begins

---

[47] *Id.* at 828.

[48] Because the federal litigation had the potential to answer the critical questions presented in the instant appeal, on June 8, 2022, this Court issued an order reserving decision on the pending petitions until the United States Court of Appeals issued its decision in *Adelphia*.

[49] West Rockhill has declined to participate in this appeal, and has informed this Court that, during the pendency of the instant Petitions for Allowance of Appeal, West Rockhill withdrew its underlying EHB appeal. *See* West Rockhill Twp.'s Notice of Non-Participation, 8/18/2023 & Attachments A & B (Orders of Labuskes, EHB J., dismissing West Rockhill's appeals at 2019-039-L and 2020-099-L). West Rockhill asserts that this renders the West Rockhill appeals moot. We agree. Accordingly, we hereby **DISMISS** the instant appeals at 22 EAP 2023 and 78 MAP 2023. This has no material bearing on the lone substantive question presented in both of the original cases. All briefs cited were filed or cross-filed in the *Cole* appeal.

by examining the text . . . not by psychoanalyzing those who enacted it"); *United States v. Gonzales,* 520 U.S. 1, 6 (1997) (where "[g]iven [a] straightforward statutory command, there is no reason to resort to legislative history"); *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"); *accord Dooner v. DiDonato,* 971 A.2d 1187, 1195 (Pa. 2009) ("The language used by [Congress] is the best indication of its intent.").[50]

This case also implicates federal preemption, which brings to bear its own set of governing principles of which we are mindful:

Article VI, cl. 2, of the United States Constitution, the Supremacy Clause, provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Thus, according to the United States Supreme Court, laws that are in conflict with federal law are "without effect." *Altria Group, Inc. v. Stephanie Good,* 555 U.S. 70, 76 (2008) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)). . . .

In determining the breadth of a federal statute's preemptive effect on state law, we are guided by the tenet that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996)). Congress may demonstrate its intention in various ways. It may do so through express language in the statute (express preemption). Yet, even if a federal law contains an express preemption clause, the inquiry continues as to the substance and the scope of Congress' displacement of the state law. *Altria Group,* 555 U.S. at 77.

In the absence of express preemptive language, Congress' intent to preempt all state law in a particular area may be inferred. This is the case where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation. That is to say, Congress intended federal law to occupy the entire legislative field (field preemption), blocking state efforts to regulate within that field. *English v. Gen. Elec. Co.,* 496 U.S. 72, 79 (1990).

---

[50]  *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 51 (Pa. 2011) (citations modified).

Finally, even where Congress has not completely displaced state regulation in a specific area, state law is nullified if there is a conflict between state and federal law (conflict preemption). *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995). . . .

Additionally, concepts of federalism and state sovereignty make clear that in discerning whether Congress intended to preempt state law, there is a presumption *against* preemption. *Altria Group,* 555 U.S. at 77. Specifically, the United States Supreme Court has stated that "it will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so." *N.Y. State Dep't of Soc. Servs. v. Dublino,* 413 U.S. 405, 413 (1973) (quoting *Schwartz v. Texas,* 344 U.S. 199, 202-03 (1952)).[51]

Germane and to similar effect to the overarching presumption against preemptive effect is the above-mentioned bias in favor of the uninterrupted completion of state administrative proceedings before federal court intervention.[52]

### B. Finality of Administrative Action

The Commonwealth Court in this case took as granted the putative requirement of administrative finality as well as the Third Circuit's determination that DEP decision-making is final upon issuance, notwithstanding the availability of review before the EHB. We also take as granted the administrative finality requirement. We are less sanguine about the Third Circuit's decision as to what comprises final administrative action within our own state administrative system, especially when it is inferred from what amounts to circumstantial conjecture and when it contradicts an express state statutory provision.[53]

---

[51]     *Dooner*, 971 A.2d at 1193-94 (Pa. 2009) (citations modified; emphasis in original).

[52]     *See Bell v. New Jersey*, 461 U.S. 773, 778 (1983).

[53]     *See* 35 P.S. § 7514(c) ("[N]o action of the [DEP] adversely affecting a person *shall be final as to that person until the person has had the opportunity to appeal the action* to the [EHB] under subsection (g). If a person has not perfected an appeal in accordance with the regulations of the [EHB], the department's action shall be final as to the person." (emphasis added)).

On the subject of finality, the *Riverkeeper III* court relied substantially upon the First Circuit decision in *Berkshire Environmental*. In *Berkshire Environmental*, the gas company received from FERC a certificate of public necessity under the NGA. The certificate was conditioned, *inter alia*, on compliance with the federal Clean Water Act as determined by the Massachusetts Department of Environmental Protection ("MassDEP"). MassDEP ultimately granted conditional certification, including a condition that forbade the gas company from commencing any work until "the expiration of the Appeal Period set forth below and any appeal proceedings that may result from an appeal."[54] Massachusetts regulations imposed a 21-day window for such appeals. An appeal was filed, and the gas company sought a stay of administrative proceedings based upon the claim that, upon MassDEP's allowance of a conditional approval under the CWA, jurisdiction over any further challenge shifted to the United States Court of Appeals under the NGA.

The gas company did not argue that MassDEP's decision was final in itself, but contended that NGA Section 717r contained no finality requirement because it referred to state "action" but did not use the word finality. The company contrasted this silence with the reference to "final agency action" found in Section 704 of the federal Administrative Procedure Act.[55] But, in the face of the "strong presumption" that judicial review must await *final* agency action, the court refused to draw the negative inference

---

[54]    *Berkshire Env't*, 851 F.3d at 108.

[55]    *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review." (emphasis added)); *see also Berkshire Env't*, 851 F.3d at 108-09.

that MassDEP's undisputedly *non*-final action was subject to immediate First Circuit review.[56]

More importantly for our purposes, the *Berkshire Environmental* court distinguished Section 717r's highly detailed account of the internal review process for FERC decisions[57] from its omission of any such account of state administrative procedures. The best explanation for the distinction, the court opined, was that Congress intended to account for the fact that "state procedures giving rise to orders reviewable under [Section] 717r(d)(1) may (and undoubtedly do) vary widely from jurisdiction to jurisdiction."[58] Thus, the omission of reference to "final" agency action merely preserved the flexibility required to anticipate the many variations of state processes to which the NGA would have to adapt.[59]

The court also noted that the requirement of finality is *reinforced*, rather than contradicted, by Congress's interest in ensuring that review happens in a reasonable amount of time. It did this not by short-circuiting state review, but by imposing measures designed to keep state proceedings moving.[60] "A Congress that placed so much emphasis upon avoiding delay in the adjudication of requests for [FERC certification under the Clean Water Act] would not likely have intended to authorize the delay that

---

[56]    *Berkshire Env't*, 851 F.3d at 109 (citing *Bell*, 461 U.S. at 778).

[57]    *See generally* 15 U.S.C. § 717r(b) ("Review of Commission order") (walking through the procedure for challenging a FERC order in considerable detail).

[58]    *Berkshire Env't*, 851 F.3d at 109.

[59]    Incidentally, this at least hinted that Congress intended to leave any question concerning when state action becomes final to the vicissitudes of state law.

[60]    *Id.* at 109-10 (detailing measures designed to ensure timely conduct of state permit review).

interlocutory reviews of every state agency action, final or not, would inevitably engender."[61]

The court went on to explain that agency action is "final" where it "represents the culmination of the agency's decisionmaking process and conclusively determines the rights and obligations of the parties with respect to the matters at issue."[62]  The court noted that the MassDEP action had some qualities of final agency action: it was stated in affirmative terms, the available adjudicatory review was described as an appeal, and the letter embodying MassDEP's conditional approval would assume the force of law in the absence of a timely-filed petition for an adjudicatory hearing.[63]

But the First Circuit cited several interrelated, countervailing considerations.  First, applying for a water quality certification initiated a "single, unitary proceeding, an essential part of which is the opportunity . . . to have an adjudicatory hearing."[64]  Second, the adjudicatory hearing in question was "a review of [the gas company's] application, rather than a review of a prior agency decision.  MassDEP accords no deference to the preliminary findings included in [MassDEP's] certification."[65]  And third,

> the manner in which Massachusetts has chosen to structure its internal agency decision-making strikes us as hardly unusual or contrived.  It allows for unopposed actions to proceed to finality without the time and expense of full-blown adjudicatory proceedings, while preserving the parties' rights to such proceedings when sought.  *With the taking of evidence and* de novo

---

[61]     *Id.* at 110.

[62]     *Id.* at 111 (quoting *Rhode Island v. EPA*, 378 F.3d 19, 23 (1st Cir. 2004)).

[63]     *Id.*

[64]     *Id.* at 112.

[65]     *Id.*

*consideration, it bears the hallmarks of decision-making by expert administrative agencies rather than those of judicial review.*[66]

In many respects, the relationship between Pennsylvania DEP permitting and EHB review bears characteristics that resemble those which the *Berkshire Environmental* court found to militate in favor of ruling that finality must await all stages of administrative review. However, despite relying upon *Berkshire Environmental* for the basic finality requirement, as explained below, the *Riverkeeper III* court viewed some of the very same factors contrarily as militating in favor of a finding of finality upon DEP approval without regard to the prescribed adjudicatory review by EHB. Moreover, it seemed to do so based solely upon the fact that the EHB is nominally fashioned in Pennsylvania as an independent, quasi-judicial body and MassDEP is not, notwithstanding that the parameters and nature of its role in the process are, as a practical matter, very difficult to distinguish from the Massachusetts procedures described in *Berkshire Environmental*.

The *Riverkeeper III* court proceeded from the broadly acceptable premise that finality is required, which it found persuasively established by the *Berkshire Environmental* court. But it took a very different view of what comprised finality in Pennsylvania, approaching the matter as a question of federal rather than state law.[67] It then noted two criteria from which it derived the conclusion that DEP action is final notwithstanding the availability or even the pendency of EHB review. First, the Third Circuit asserted, "an appeal to the EHB does not prevent [DEP's] decision from taking

---

[66]    *Id.* (emphasis added).

[67]    *Riverkeeper III*, 903 F.3d at 72 ("Although the decisionmaking process we are reviewing is defined by Pennsylvania law, we nevertheless apply a federal finality standard to determine whether Congress has made the results of that process reviewable under the [NGA].").

immediate legal effect."[68]  Specifically, an EHB appeal in itself does not operate as an automatic stay upon the DEP's decision.

Second, the court highlighted precisely the considerations that the *Berkshire Environmental* court found favored an understanding that finality would *not* be achieved until any state-provided review was complete:

> EHB's review of [DEP] decisions is conducted largely *de novo*, with parties entitled to introduce new evidence and otherwise alter the case they made to the [DEP].  While Pennsylvania law refers to proceedings before the EHB as an "appeal," the Commonwealth Court has explained that the [EHB] is not an "appellate" tribunal in the ordinary sense of that term. . . .  The [EHB's] duty is to determine if [DEP's] action can be sustained or supported by the evidence taken *by the [EHB]*."  *Leatherwood, Inc. v. DEP*, 819 A.2d 604, 611 (Pa. Cmwlth. 2003) (emphasis added) (citation omitted).[69]

The *Riverkeeper III* court did not explain why similar considerations were incorrectly assessed in the First Circuit as *favoring* treating the adjudicatory review process as part and parcel of a unitary state administrative proceeding.  Nor did the court in any way distinguish Massachusetts from Pennsylvania law in a way that overcame these obvious similarities, except by reference to the absence of an automatic supersedeas pending EHB review.  Setting aside a fair question as to whether that distinction can do the work that the Court of Appeals asked it to, we find it noteworthy that the court did not even acknowledge EHB's authority to enter such a supersedeas upon request of a party.[70]

The *Riverkeeper III* court went on to suggest as a distinction from Massachusetts law the fact that the DEP's decision was not "tentative or interlocutory," because—

---

[68]     *Id.*

[69]     *Id.* at 72-73 (citation modified).

[70]     35 P.S. § 7514(d)(1).

ostensibly unlike Massachusetts—DEP's initial decision was *not* "ineffective until either the time to appeal expired or a final decision on appeal issued."[71]  In so holding, though, the *Riverkeeper III* court ignored without explanation the express statutory provision providing—just like the proviso imposed by the Massachusetts certification at issue in *Berkshire Environmental*—that a DEP order *is not final* until the time to seek EHB review has expired.  It is true that filing for a hearing before the EHB review does not work as an automatic stay.[72]  But EHB has statutory authority to impose one upon request,[73] further bringing its authority and function into line with the adjudicatory body in Massachusetts.

We are not persuaded that Pennsylvania's system is so different in function from Massachusetts' system.  The essential similarities between Massachusetts' administrative and quasi-adjudicative two-step process and our own are too obvious to disregard for what amount to formal rather than substantial reasons.  And insofar as the *Riverkeeper III* court cited precisely the same factors in support of pre-appeal finality that the *Berkshire Environmental* Court cited in support of deferring finality pending administrative review, we are left to conclude that the respective opinions are contradictory, which militates against taking the Third Circuit's nonbinding decision as gospel.

---

[71]     *Riverkeeper III*, 903 F.3d at 73.

[72]     *See* 35 P.S. § 7514(d)(1) ("No appeal shall act as an automatic supersedeas.").

[73]     *Id*.  In assessing the sufficiency of the cause shown, the EHB may consider the risk of "irreparable harm to the petitioner," "the likelihood of the petitioner prevailing on the merits," and "the likelihood of injury to the public or other parties, such as the permittee in third party appeals."  *Id*. §§ 7514(d)(1)(i)-(iii).

This is especially the case given the Third Circuit's decision to determine what constitutes final action in Pennsylvania state proceedings, all the more when it reaches a conclusion implicating state law to at least some extent, a conclusion that contradicts Pennsylvania's own statute on precisely that subject—a statute that brings Pennsylvania law closer into line with Massachusetts.

In this regard, the *Riverkeeper III* court explained:

> Petitioners are incorrect that the Department's decision is non-final for purposes of this Court's review because a Pennsylvania statute provides that "no action of [the DEP] shall be final as to [a] person until the person has had the opportunity to appeal the action to the [EHB]" or the time to appeal has expired. 35 P.S. § 7514(c). Despite this language, Pennsylvania cannot declare when and how an agency action taken pursuant to federal law is sufficiently final to be reviewed in federal court. State law's use of the word "final" to characterize an agency's decision is irrelevant in that context, except so far as that language is relevant to the substantive effect of the order in question and the practical character of the procedures surrounding it. Here, those underlying realities indicate that [the DEP] has taken final action.[74]

This brief passage disregards the Third Circuit's entire effort to distinguish the *Berkshire Environmental* decision from *Riverkeeper III*, which effort was wrapped up in a comparative examination of *state* law and procedure—one we find unconvincing for the reasons set forth above.

We respectfully decline to adopt the Third Circuit's decision to cast aside Pennsylvania's own understanding of its administrative system as described by the very legislature that devised that system in the first place. The General Assembly's express reservation of finality in Section 7514 reflects the Pennsylvania legislature's own view of

---

[74] *Riverkeeper III*, 903 F.3d at 74 (citation modified). For reasons previously stated, we do not agree with the *Riverkeeper III* court regarding the "underlying reality" of finality upon DEP decisionmaking, which contradicts Section 7514(c)'s demurral of finality during the period when EHB review may be invoked.

the nature of state proceedings. The General Assembly intended that, despite their organizational independence, the DEP and the EHB work *together* in sequence to ensure sufficient process and oversight to rule soundly upon a given environmental application. This underscores our system's general resemblance to that of Massachusetts in terms of operation.

As noted, we don't believe that *Riverkeeper III* and *Berkshire Environmental* can be reconciled on the question of finality. Bound by neither, we are left to choose. On balance, we find that *Berkshire Environmental* provides a more convincing account of what comprises state finality: where a state has provided a two-stage process for the issuance and final recognition of an environmental permit, those two stages combined are the administrative process, not merely one of them. It is upon the completion of those two phases—or the expiration of time to pursue review of the first decision—that finality is achieved for purposes of Pennsylvania law. That is what ought to be recognized as the finality requisite to federal review under the time-honored presumption that complete state administrative processes are to be favored before the federal judiciary gets involved.

For these reasons, we respectfully disagree with the Third Circuit's suggestion that finality is achieved before EHB review is sought or the option to do so expires. To do otherwise would fly directly in the face of our General Assembly's manifestly contrary intention. And it would contradict the persuasive reasoning of the *Berkshire Environmental* court.[75]

---

[75] To the extent that the Commonwealth Court's decision in this case can be read as an endorsement of that aspect of *Riverkeeper III*'s reasoning, we disapprove.

As we segue into our endorsement of the Commonwealth Court's determination that an administrative appeal is not a civil action in the relevant sense under Section 717r(d)(1) of the NGA, we note that *Bordentown* speaks to both finality and what constitutes a civil action. In so doing it further rebuts Appellants' accounts of finality.[76]

Appellants insist that *Bordentown* is disanalogous relative to finality. They base this insistence upon a distinction between New Jersey and Pennsylvania's regulatory systems much like the distinction in *Berkshire Environmental* between intra-agency review in Massachusetts and New Jersey and inter-agency review in Pennsylvania. But in focusing upon preemptive effect, Adelphia sows a confusion exacerbated by the fact that it appears to concede *Bordentown*'s validity for the proposition we find persuasive: "In *Bordentown*, the Third Circuit held only that the NGA's jurisdictional provision does not divest the NJDEP of '*its* authority to review challenges to *its permits* via *its* established administrative procedures.'"[77]

This selective quotation seems to mask the court's full comment, which *favors* our account even more clearly:

> We need not determine whether or not a NJDEP permitting decision is already final during the period when a party may still seek an adjudicatory hearing to challenge the permit because, as explained below, the fact that we may have immediate jurisdiction to hear a challenge to a permitting decision does not mean that the agency charged with administering the

---

[76] Appellants' positions in this case are supported by *amicus curiae* Transcontinental Gas Pipe Line Co. Appellees have the support of a joint brief submitted by *amici curiae* Delaware Riverkeeper Network; Citizens for Pennsylvania's Future; Clean Air Council; and Mountain Watershed Association.

[77] Adelphia's Br. at 38 (quoting *Bordentown*, 903 F.3d at 271 n.24 (Adelphia's emphasis)).

permitting process is thereby divested of its authority to review challenges to its permits via its established administrative procedures.[78]

In this passage, the *Bordentown* court explicitly *declined* to validate the distinction relative to finality that Appellants would have us endorse. In so many words, the *Bordentown* court reserved decision on whether, by virtue of New Jersey's peculiar administrative structure or otherwise, *Riverkeeper III* controls relative to finality. Concomitantly, the *Bordentown* court declined to commit on its immediate federal jurisdiction mid-stream in the New Jersey process, contradicting any argument that it is the absence of finality that affords continuing New Jersey administrative jurisdiction.[79]

### C. Civil Actions

Having said all that, even if we assumed, like the Commonwealth Court, that DEP action alone *is* final in the sense asserted by *Riverkeeper III*, we agree with the Commonwealth Court that EHB review is not a "civil action" in the sense relevant to NGA Section 717r(d)(1)'s assignment of original and exclusive jurisdiction to the United States Court of Appeals. Like the Commonwealth Court, on this point, too, we find *Bordentown* persuasive. *Bordentown* speaks to both state and federal law regarding what constitutes a civil action, and it does so specifically in the context of Section 717r of the NGA. After reviewing NGA Section 717r(d)(1)'s "original and exclusive" language, the *Bordentown* court noted that such jurisdiction is, in plain language, limited to "civil action[s] for the

---

[78]     *Bordentown*, 903 F.3d at 271 n.24.

[79]     For these reasons, Adelphia's contention that the Commonwealth Court's reliance upon *Bordentown* "sweep[s] aside the *Riverkeeper* cases," Adelphia's Br. at 20, is unconvincing.

review of an order or action of a . . . State administrative agency."[80]  Noting the lack of a federal statutory definition of "civil action," the court turned to the phrase's common meaning in determining whether the phrase, as used in Section 717r, encompasses state administrative proceedings.

> First, the court noted that the United States Supreme Court has indicated
>
> that "the word 'action' often refers to judicial cases, not to administrative 'proceedings,'" *West v. Gibson*, 527 U.S. 212, 220 (1999), and has parsed statutes based on Congress's understanding of the distinction between a civil "action" in a court and an administrative "proceeding" at the agency level, *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 60-62 (1980).[81]

United States Supreme Court decisions in numerous contexts have drawn the same distinction.[82]

If one does not consider the formal structural distinction between New Jersey's administrative process and our own material in the relevant aspects—and we do not—Adelphia has no argument against *Bordentown* controlling in favor of EHB jurisdiction.[83] There is a colorable argument that the divergent structures make a difference with respect to when finality attaches.  But it is not at all clear why this should bear upon what comprises a civil action—either way, the final review function is performed by an administrative agency acting in a quasi-judicial capacity.

---

[80]     *Bordentown*, 903 F.3d at 267 (quoting 15 U.S.C. § 717r(d)(1)).

[81]     *Id.* (citations modified).

[82]     *Id.* (collecting cases).

[83]     *See* Adelphia's Br. at 38-39.  The DEP's brief provides a more robust account of New Jersey's administrative procedure in furtherance of establishing the putatively dispositive structural distinctions.  *See* DEP's Br. at 30-36.  But as helpful as this briefing is on those technical matters, it begs the essential question of finality, and it says nothing about our own EHB Act's statutory definition of finality or the parallel substantive purpose and practical effect of our administrative hearings.

The Commonwealth Court's assessment of the distinction between administrative and civil actions is reinforced by other provisions in Title 35—indeed in the APCA itself. In Section 4013.6, addressing "[s]uits to abate nuisances and restrain violations," the legislature expressly distinguished administrative and civil matters. Specifically, the statute authorizes any person to "commence a civil action to compel compliance with this act or any rule, regulation, order or plan approval or permit issued pursuant to this act."[84] After underscoring that the Courts of Common Pleas have jurisdiction over such actions, the provision goes on to note that the action may *not* be commenced "if the [DEP] has commenced and is diligently prosecuting a civil action in a Federal or State court *or is in litigation before the [EHB]* to require the alleged violator to comply with this act."[85] Here, "*civil* action[s] in a Federal or State court" are distinguished from "litigation" before the EHB.[86]

In sum, we agree with the Commonwealth Court's analysis establishing that an EHB appeal is not, itself, a "civil action" as that term is used in Section 717r(d)(1). Thus, an appeal duly brought before the EHB cannot be the sort of action over which the United States Court of Appeals has "original and exclusive jurisdiction."

---

[84]  35 P.S. § 4013.6(c).

[85]  *Id.* (emphasis added).

[86]  The Hazardous Sites Cleanup Act similarly recognizes the distinction, providing that the DEP "may as promptly as possible reach a final settlement with a responsible person *in an administrative or civil action*" under certain specified circumstances. Act of Oct. 18, 1988, P.L. 756, 35 P.S. § 6020.707(a) (emphasis added).

### D. EHB's Enforcement Authority Under the CAA

The foregoing analysis disposes of the lion's share of Appellants' arguments. But it remains for us to address one separate theory pressed by Adelphia in particular. Adelphia argues that, because the EHB, unlike the DEP, is not specifically delegated authority to render approvals under the CAA, its actions cannot be reviewed under the plain language of NGA Section 717r(d)(1), which restricts review in the United States Court of Appeals to "an order or action of a . . . state administrative agency *acting pursuant to Federal law*."[87] On Appellants' account, only the DEP acts pursuant to federally delegated authority. As such, any EHB involvement either would permanently preclude federal court jurisdiction *or* would invite irreconcilably divergent rulings by the Court of Appeals and the EHB, because EHB decisions would be federally unreviewable.[88]

The difficulty with this argument is highlighted best by Riverkeeper in its *amicus* brief, which details EHB's explicitly designated role in the process as defined in Pennsylvania's SIP,[89] which was approved and incorporated by the EPA, rendering it tantamount to federal law.[90] The federal regulation recognizing Pennsylvania's SIP

---

[87]     15 U.S.C. § 717r(d)(1) (emphasis added).

[88]     *See* Adelphia's Br. at 35 ("To the extent that a state agency's order under the CAA is enforceable, it must be one that is made reviewable under the NGA; otherwise Congress's entire purpose in enacting § 717r(d)(1) would be lost.").

[89]     Riverkeeper's Br. at 9-11.

[90]     *See* 40 C.F.R. § 52.2020(a), (b); *see Sierra Club v. La. Dept. of Env't Quality*, 100 F.4th 555, 564 (5th Cir. 2024) ("The fact that SIPs have the force and effect of federal law has been recognized by every federal circuit court to address the issue . . . .").

specified which provisions of the SIP were approved in this regard.[91] Among these was the provision governing "Notice of basis for certain plan approval decisions," which provides that "[t]he action in [the DEP's] notice shall be final and not subject to review unless, within 30 days of the service of the notice, a person affected thereby appeals to the EHB setting forth the grounds relied upon."[92] This documents the EHB's federally approved role as a reviewing body of CAA decisionmaking. It also strongly suggests that the EPA, at least, would not consider NGA Section 717r(d)(1) as preempting EHB review.

Not only does the SIP enshrine EHB review as part and parcel of Pennsylvania's system for exercising its delegated authority to enforce the CAA, it also provides support for the foregoing finality analysis by implying that finality awaits EHB review when sought. We may and do assume that the EPA approved Pennsylvania's SIP with the understanding that an independent administrative body had review authority over the DEP's initial decisionmaking under the CAA.

This contradicts Adelphia's assertion that "the EHB does not act 'pursuant to Federal law,' and does not 'issue, condition, or deny' any permits 'required under Federal law.'"[93] In this regard, Adelphia cites one Commonwealth Court case and an EHB decision for the proposition that the most the EHB can do is direct DEP action,[94] which ostensibly is not the same as "issu[ing], condition[ing], or deny[ing]" permits as Section 717r(d)(1) describes them. Context matters, and we do not take this last

---

[91]     40 C.F.R. § 52.2020(c).

[92]     25 PA. CODE § 127.13c(d).

[93]     Adelphia's Br. at 35 (quoting 15 U.S.C. § 717r(d)(1)).

[94]     *Id.* (citing *Pequea Twp. v. Herr*, 716 A.2d 678, 683, 687 (Pa. Cmwlth. 1998); *City of Harrisburg v. DER*, No. 88-120-R, 1996 WL 375864 (Pa. EHB June 28, 1996)).

argument as given because it would require us to draw a hard distinction between the DEP provisionally approving a permit and the EHB directing DEP action as to that permit. Contrary to Adelphia's claim,[95] this suggests that, even when EHB review is invoked, review of *that* decision will lie in the Third Circuit via the DEP's action in conformity with the EHB's determination, which administrative action perforce will be final in the relevant sense.

### E. Dual Jurisdiction

Finally, Appellants argue at some length that the apparent allowance for the dual and/or simultaneous jurisdiction of the EHB and the United States Court of Appeals subverts Congress's intent to streamline natural gas approvals reflected in the NGA generally, and specifically in the extraordinary conferral of "original and exclusive jurisdiction" upon the Court of Appeals over civil actions challenging administrative action.[96]

We do not take this for granted. As noted earlier in this Opinion, *Berkshire Environmental* convincingly suggested that it is the imposition of various time limits upon state administrative proceedings that enables the simultaneous honoring of state administrative prerogatives to which Congress chose to delegate federal enforcement authority as well as the desire for expedited processes.[97]

---

[95]　*See id.* at 36-38.

[96]　*See id.* at 42-48; DEP's Br. at 21-29.

[97]　*See Berkshire Env't*, 851 F.3d at 109-10 (detailing measures designed to ensure timely conduct of state permit review).

While DEP cites prefatory provisions of Section 717 of the NGA to elucidate Congress's intent,[98] all that those speak to is the general interest in federal regulation.[99] That interest is uncontested here. The fact remains, whatever interest the government took in federalizing natural gas regulation, it did not do so in derogation of the federal delegation of CAA regulation to state agencies. Tellingly, the DEP quickly segues into a discussion of extrinsic evidence of legislative intent,[100] but legislative history is immaterial where the relevant statutory language is clear. For the reasons set forth above, the critical statutory term, "civil action," is unambiguous, and the non-statutory principle of awaiting administrative finality is well-established in binding case law undisturbed by any provision of the NGA identified by Appellants.

As importantly, though, the question of the availability of simultaneous review is not before us. And everywhere we look to discern whether it is an inevitable consequence of our ruling or those that went before, we find what appears to be *dicta*.[101] True, *Riverkeeper III* seemed to suggest that parallel review was in the offing, as noted

---

[98]  *See* DEP's Br. at 21-22.

[99]  15 U.S.C. § 717(a) ("Necessity of regulation in public interest") ("[I]t is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest.").

[100]  DEP's Br. at 22-25.

[101]  "[D]icta is 'an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. *Dicta* has no precedential value.'" *Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1243 n.11 (Pa. 2015) (quoting *Valley Twp. v. City of Coatesville*, 894 A.2d 885, 889 (Pa. Cmwlth. 2006)).

above,[102] but it is not clear that the conclusion was a necessary component or an inexorable consequence of its holding. The Commonwealth Court in this case echoed the same contingency,[103] but once again it was not necessary to resolve that issue to speak to the stand-alone question presented regarding EHB's jurisdiction to conduct administrative review of the DEP action here.

Now as well we need not decide the matter, nor will we. Our views are immaterial, both as a function of judicial restraint *and* because it is, if not technically beyond our purview in an appropriate case, at least better resolved by the federal courts. The federal half of the putative simultaneous jurisdiction is a pure question of federal law. Unlike the question regarding finality, we discern no state component to the inquiry. And unlike the question regarding what makes a "civil action," we do not believe it is effectively settled as a matter of both state *and* federal law as handed down by the final authority, the Supreme Court of the United States.[104]

---

[102] *See Riverkeeper III*, 903 F.3d at 74-75 ("*Notwithstanding the availability of an appeal to the EHB*, [the DEP]'s issuance of a Water Quality Certification was final in precisely the most important ways . . . . [The DEP's] action presents all the 'traditional hallmarks of final agency action,' and we have exclusive jurisdiction to hear any 'civil action for the review' of such a decision." (emphasis added) (quoting *Riverkeeper II*, 870 F.3d at 178)).

[103] *Cole*, 257 A.3d at 821 ("We agree with the Third Circuit that, notwithstanding the ability to directly challenge the plan approval in the Third Circuit, EHB review was available *if desired*." (emphasis in original)).

[104] We recognize that, after (but in connection with) this argument, Adelphia provides a detailed argument in favor of preemption itself. *See* Adelphia's Br. at 48-57. However, these arguments, while thorough on the subject, ultimately are predicated on Adelphia's views about finality, what constitutes a civil action, and its broader assumptions regarding Congressional intent and how that informs the various considerations at issue in this case. Our rejection of the former two positions, and our doubts regarding Appellants' account of what Congressional intent requires, effectively cut the legs out from under the pure arguments for implied preemption. We grant that NGA Section 717r contains an express (continued…)

## IV. Conclusion

The EHB was too quick to disclaim its own jurisdiction over Appellees' administrative appeal in this case. Nothing in state or federal law compelled its decision, and aspects of *Riverkeeper III* in particular strongly suggested that EHB retained jurisdiction over Appellees' administrative appeal as such. Whether Appellees individually or collectively might instead have filed a civil action before the United States Court of Appeals is not our concern. Nor is it directly at issue in this case. We accepted review to determine whether EHB had jurisdiction over the instant appeals. We hold that it did.

We hereby affirm the ruling of the Commonwealth Court, and we remand to that court for the purpose of remanding this matter to EHB for a decision on the merits.

Chief Justice Todd and Justices Donohue, Dougherty and McCaffery join the opinion.

Justice Dougherty files a concurring opinion in which Justices Donohue and McCaffery join.

---

preemption term, but only as to civil actions. We will not read it more broadly than its terms. *Dooner*, 971 A.2d at 1194 ("[C]oncepts of federalism and state sovereignty make clear that in discerning whether Congress intended to preempt state law, there is a presumption against preemption.").

Adelphia also makes a token wave at arguing that the Commonwealth Court improperly "implicated" an exhaustion requirement incompatible with federal law. Adelphia's Br. at 41-42. As the Commonwealth Court acknowledged in this case, "The question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985); *see Cole*, 257 A.3d at 817-18. No one is questioning that proposition, nor is such a question essential to the lower court's, or this Court's, analyses, which are compatible with the proposition.

Justice Mundy files a concurring opinion.

Justice Brobson did not participate in the consideration or decision of this matter.